The first case this morning is 522-0728, People v. McCarty. Arguing for the plaintiff appellant is Sally Cohen. Arguing for the defendant appellee is Jessica Theoratos. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, ladies. Ms. Cohen, for the defendant, the appellant, are you ready to proceed? I'm ready, thank you. Okay, you may do so. Your Honors, on August 22, 2022, Mr. McCarty, who was then representing himself pro se against a three-count indictment for methamphetamine delivery, had a stroke for which he was hospitalized. Two days later, at a hearing on August 24, 2022, Mr. McCarty appeared before the trial court and informed the trial court that his stroke had really affected him. It had caused train-of-thought issues, he was experiencing memory loss, and as he told the trial court, he did not know what to do. He asked that the trial court reappoint him counsel. And hearing no objection from the state, the trial court agreed to do so. In the trial court's words, Mr. McCarty was experiencing medical issues. But Mr. McCarty was not complaining of mere medical issues. As even the trial prosecutor recognized at this hearing, Mr. McCarty was raising a bona fide doubt of his own fitness. The trial prosecutor, in fact, suggested, and I quote, if he's having train-of-thought issues, I would be apt to order a fitness evaluation. Yet, despite the party's apparent agreement that a bona fide doubt of Mr. McCarty's fitness had arisen as a result of his stroke, no fitness evaluation was ever ordered or conducted. Instead, just six weeks later, on October 12, 2022, the trial court accepted Mr. McCarty's plea of guilty and imposed the agreed-upon sentence of 18 years in prison. But the trial court's acceptance of Mr. McCarty's plea on this record was error, and this court should permit Mr. McCarty to withdraw it. In this case, the trial court's failure to make any effort to ensure that Mr. McCarty was fit to plead guilty was an abuse of discretion that may have deprived Mr. McCarty of the most basic due process rights, not to be tried, convicted, or sentenced while mentally unfit. The trial court's failure to conduct a fitness inquiry also violated Section 104-11A of the Criminal Code, which explains the issue of the defendant's fitness for trial to plead or to be sentenced may be raised by the defense, the state, or the court, and further instructs when a bona fide doubt of fitness is raised, the trial court shall order a determination of the issue before proceeding further. So, on appeal— Ms. Coon, let me ask you, did the defendant's attorney, once he was appointed, ever say anything to the court or file any pleadings? No, Your Honor. The defendant's trial-level defense counsel, once reappointed, did not raise any issue regarding his fitness. So, what do you have to say about that? You have an attorney representing the defendant. Have you raised ineffective assistance of counsel here? Well, so, here, the issue of Mr. McCarty's fitness was raised by Mr. McCarty himself, so the trial court's error occurred at the moment at which he allowed the proceedings to continue without ordering the fitness hearing. So, our view is that the error arose on August 24th because the trial court's duty to determine the issue and not trial counsel's. Well, but then several weeks went by, and obviously, the defense counsel didn't raise the issue after he or she consulted with the defendant. The defense counsel did not re-raise the issue, but Mr. McCarty had already raised it himself, and having counsel appointed after the stroke, she had no basis of comparison, the way that the trial court and the trial prosecutor did, to observe his changes in demeanor and his changes in competency and cognitive decline before and after the stroke. So, whether she should have raised it or not, she probably should have, but she was in a less observant position from the other people that were in the courtroom on the day that it was raised. This trial judge had worked with the defendant trying to decide whether or not he wanted to represent himself or not, and the trial judge had a pretty good view of the defendant's abilities before the stroke. Would you agree with that? I would agree with that, yes. And so, on the day when he raised the issue of he was not in as good a condition as he had been prior, do you think the trial judge made a determination on that day whether or not a fitness hearing would be necessary? From the record, it does not appear that the trial court made an affirmative decision about, you know, he did not say, I do not find a bona fide doubt here, did not say I declined to order the fitness determination. It seems as though the trial court was under what I would view as the mistaken impression that by appointing counsel that would, you know, cure the error, but the statute is clear that the issue needs to be determined before proceeding further, and in this case it proceeded all the way to the guilty plea without the issue ever being determined. What about the effect of your client not having filed a motion to withdraw his guilty plea? Yeah, so as we write in the brief, there's an admissions exception, of course, to 604D, which permits a person who received incomplete or improper admissions to file a motion to withdraw a plea, and that has been extended to cases in which a person's fitness has not been determined because, you know, in McKay they say it's just but a small step for a person receiving no admonishments than those given to a person who can't understand them, and since here there's just really no way to say whether Mr. McCarty was ever fit after his stroke because the issue was never determined, that admissions exception should apply here. Okay, thank you. So if there are no further questions here, I would just say for the reason I stated in those in Mr. McCarty's briefs, we ask that you vacate Mr. McCarty's guilty plea, remand the cause for determination of his current fitness, and allow him to plead anew if his fitness is established. Okay, thank you. You'll have a few minutes after Ms. Theodoros. Is that how you pronounce your name? Close enough. Theodoros. You'll have a few minutes, Ms. Cohn. Let's hear from the state. May it please the court. Good morning. My name is Jessica Theodoros, and I represent people. No abuse of discretion occurred in this case by the trial court not ordering a fitness evaluation. On August 22, 2022, defendant was unable to be brought to court because of a possible stroke. Defendant was representing himself at the time. Two days later, defendant was present in court and stated, at this time, your honor, if it's possible, I really think I need an attorney. This last deal, it's affected my train of thought. I've suffered some memory loss. I don't really even know. I don't know what to do. The trial court asked the people if they had any objection to appointing counsel for defendant. The people had no objection and said that a fitness evaluation would be apt. The trial court replied that it was up to its discretion, and I would say that that was an affirmative decision by the trial court not to hold a fitness hearing, and decided to appoint a new attorney for defendant, and informed defendant he could either proceed to trial in September as planned, but it would likely need to be moved so he could work with his new attorney. After some back and forth with defendant, defendant stated he wanted to move the jury trial to work later to work with his new attorney, and stated he wasn't sure what he was supposed to be asking for. The trial judge appointed a public defender for defendant. Later in August, defendant's new public defender informed the court that she met with defendant, and they were hoping to schedule trial in November, but due to scheduling conflicts, defendant's trial was respectively set for December 5. Defense counsel asked for a pre-trial date in October to see if she could make headway on potential offers. Defense counsel stated she spoke with defendant, and defendant understood that any delay due to her being appointed would be attributable to him. The trial court asked defendant if he understood, and defendant said he guessed that he understood the delay was attributable to him. On October 12, 2022, two months after defendant's trial, the people informed the court that a plea agreement had been negotiated, and defendant wished to plead guilty to count two in exchange for a term of incarceration at 18 years at 50%, and the dismissals of counts one and three, as well as two other charges defendant was facing. As part of defendant's plea, a visit was arranged between him and his wife at her correctional facility. Defendant stated that he understood the terms of the plea agreement. Defendant was admonishing question about whether the plea was made knowingly and voluntarily, and the trial court ultimately accepted the plea agreement. For two months after defendant's stroke, defense counsel met with defendant and did not raise any issue regarding his fitness. For two months after his stroke, defendant came to court and was able to participate in the proceedings. The only thing the record shows is that defendant's stroke impacted his ability to act as his own attorney right after he had the stroke, and that did not rise to the level of creating a bona fide doubt as to his fitness. A number of factors may be considered in determining whether a bona fide doubt of defendant's irrational behavior, his demeanor at trial, any prior medical opinion on defendant's competence, and any representations by defense counsel on the defendant's competence. Here, there was no irrational behavior by defendant. Nothing in defendant's demeanor suggested he was unfit. There was no medical opinion regarding defendant's competence, and it is especially telling that defense counsel, who had been meeting with defendant prior to the plea agreement, brought forth no allegations that defendant had any mental fitness issues. A defendant is unfit to stand trial if, as a result of a mental or physical condition, he is unable to understand the nature and purpose of the proceedings or to assist in his defense. Such is not the case here. Defendant was not acting mentally irrational, nor did his demeanor indicate mental incompetence. Defendant had the mental capacity to rationally evaluate his situation that he was representing himself and facing trial and rationally came to the conclusion that things had become too difficult and decided his stroke impacted him enough to warrant the need help from attorney. Then, defendant indicated multiple times after he reported his stroke that he understood the nature and purpose of the proceedings and was able to participate in his own defense. Therefore, there was no bona fide doubt present as to his fitness. A trial court's fitness determination is reviewed for an abuse of discretion, and no abuse of discretion occurred here where the trial court was able to see and speak with the defendant and found that a fitness evaluation was not necessary. The record makes clear that the defendant was able to understand the purpose of the proceedings and was able to participate in his own defense at all stages of the proceedings, especially when he entered into the fully negotiated plea agreement. Therefore, the people respectfully request this court affirm the judgment of the trial court. Are there any questions I could answer at this time? Ms. Fiorato, what do you say about the state's representation that appointment would be I think that was out of an abundance of caution, but it was ultimately up to the trial court to make that determination. And the record is not very well developed on that issue, is it? No, it's the trial judge says it's up to its discretion, and then points counsel. So the standard of review is abuse of discretion here? Yes. Okay. Any questions, Justice Moore? No. Justice Welsh? No questions. Okay. Thank you, Ms. Fiorato. I apologize for mispronouncing your name, but I think I've got it. Thank you for your arguments here today. Ms. Cohn, do you have some rebuttal? Just a very brief rebuttal here. The state has said that nothing in his demeanor changed, but the record really shows the opposite. Not only did the prosecutor who was in the courtroom to observe changes in his demeanor, agree that a fitness evaluation would be appropriate. The changes are evident in the record. He didn't know what day it was. He said he didn't know what to do. He complained of memory loss. Obviously, demeanor changes are not going to be recorded in a written record, but what the record does show is a profound change from just weeks before when he was litigating multiple motions, subpoenaing witnesses from prison. So to the extent the record needs more development, it's because a fitness evaluation was never ordered, and now is the time to correct that error. Thank you. Justice Moore, any questions? No questions. Justice Welsh? No questions. Okay. Does that conclude your argument, Ms. Cohn? That does. Thank you. All right. Thank you both for your arguments here today. This matter will be taken under advisement, and we'll issue an order in due course.